The first case for this morning is Spray v. The village of Woodson, 4-1808-27. The appellant, John Cunrod. Thank you. And appellee, Mr. Yao. Mr. Cunrod. Thank you. And the police court and the council. I am John Cunrod, hearing for the appellant, Plaintiff Larry Spray. I would like to thank the court, first of all, for this opportunity to be heard. We believe that the lower court can properly make determinations of material fact, and the basis of summary judgment. We also believe there remains a change in issues of material fact, which render that judgment inappropriate. I ask that the court vacate that action, and remand the matter to the trial court for further determination on the merits. First of all, as to the finding of the court, of disputed material fact, summary judgment is, of course, only proper when there is no subjective issue of material fact, and really, the party is therefore entitled to judgment as a matter of law. Of course, we cited the right that John's hostile, a matter decided by this court in 1992, in our brief. In its order, the trial court, in the interim summary judgment, specifically stated, the court finds, from the evidence presented in Act 1859, Platt, was dedicated and accepted with an intent to create the alleged question as located in the record at C313. Dedication and timely acceptance of both questions of fact, as I believe was set out in the City of Chicago versus Russell case, and dedication in City of Greenville versus Fong, as to acceptance. As this court, in the right decision, directly stated, the trial court should deny summary judgment, but must make findings of fact. Now, that fact alone would seem to prevent the trial court from appropriately and properly entering summary judgment, and I believe it provides this court with ample opportunity to make that finding. Now, secondly, there remains genuine issues of material fact, which renders the summary judgment inappropriate. The creation by dedication of the public body requires both an intent on the part of the landowner to dedicate the land for public use, as well as a timely acceptance of the appropriate public body. And that is set out in the Contour case versus Bill of Parks, cited by both parties in this proceeding. Now, here, there are three clients in one atlas before the court that are relevant to the factual determinations of the intent to dedicate and the intent of the public body to accept. We have, first of all, C-87 on the record, the 1859 original town plaque. It shows the disputed plaque. We take the position it's unclear as to the intent of what that area was to be for. That's followed shortly by the 1867 correcting plaque of the town of Wilson, located at C-88 on the record. It does not show the disputed track. It does not show an alley. Does it not say, however, that the only area of amendment is an area that is completely separate from where the alley is located? And does it not also say that everything else is to be considered the same? Yes, it does. And there's one point, Your Honor. And if I could address that point, as I was preparing to do, it does indicate that everything else is the same. But it goes on in its recitals to give us additional information. And it is our position, by the way, that the two documents, in fact, work together. It's parallel to a correcting deed, where the original deed and the correcting deed really form one conveyance. We believe that the 1859 plaque and the 1867 plaque do, in fact, work together, that they create one effective act of dedication. Those words are contained. And I think those words are important because the recitals of the 1867 correcting plaque give us additional information that's not contained in the, or I'm sorry, the 1867, gives us additional information not contained in the 1859 plaque. And that information are the dimensions of the correctional plan. Those dimensions are set out as 488 and a half feet east and west, 650 feet north and south. In fact, that's the language of the 1867 plaque, the out boundaries of said town. Beginning at the quarter section corner and the center of the section are fence running west 488 feet, south 650, east 488 and a half feet, and then north 650. That language is then indicated that this agrees in every respect with the original plaque. That tells me that those dimensions also apply to the original plaque. Those dimensions, of course, are critical in determining the boundaries of the original town and whether this disputed area even lies within that disputed area. And so it's important to remember that dimension of 488 feet and a half feet, and really that's our primary point here today. That details with the affidavit of the surveyor, Mr. Meyer, who located this 24th street and gives us the dimensions. That's found at C-172 of the record. And his work clearly shows that the west side of the planted lots, not the alley or the port alley or the line beyond the lots to the west, but going from the section center running west, the west boundary of the lots lie 488 and a half feet west of the center section, the western limit of the original town. His survey also shows that the disputed area begins at that point and runs further to the east and in fact terminates 508 and a half feet, 20 feet more, additionally, from that section center. So in other words, going back to the language, it agrees in every respect. Yes, it does. And those dimensions apply to the 1859 plot just as well as they apply to the 1867 plot. Those dimensions firmly establish the boundary of the town, east to west, 488 and a half feet. This disputed 20 feet lies beyond that 488 and a half feet. So it is our position that those circumstances clearly create a genuine issue of material fact that runs counter to the position of the defendant's account. So thank you, Your Honor, for pointing that out. We then also have the 1889 W.P. Craig's edition, which is subsequently platted and as the record will reflect, at C-103, the W.P. Craig's edition begins immediately west of the platted lots. It leaves no room for a 20-foot alley and it starts from that point and then moves on to the west. So it does not show the alley and it shows the disputed area as a part of Block 1, Block 2 of Craig's edition, which is now owned by the plaintiff, Mr. Sprague. Let me ask this question. With regard to the measurements, how is it then that he concludes that the 20-foot alley is in fact an alley of the municipality which has never been vacated or abandoned? Exactly, Your Honor, and another excellent point. It's our position that that opinion is of no value as that is a legal conclusion beyond his ability to make. As a layperson, he's a surveyor. He's not an attorney. That is something that's in the province of the court. Well, but he's concluded that it was contained within the municipality's property. Well, first of all, that conclusion is in error because clearly, as set out in the plans, it extends beyond 488 and a half feet. Quite simple. So he may have said that. He was incorrect. Did you have a counter-affidavit to attest to that? Your Honor, and another excellent point, I don't believe that an affidavit is required because his own work establishes and the surveys, the public records which are contained within his affidavit clearly establish that that conclusion is incorrect. So I would take the position that an affidavit to the contrary, Mr. Spray saying no, it's not included, would be of no value. The evidence is clear on its face that it is outside the scope of the town and an opinion to the contrary or spline in the case of the documents, the actual plans that are in fact the original. That's your conclusion from his affidavit. But you don't actually have a counter-affidavit indicating that in fact is a conclusion that should be. Your Honor, it's my opinion that a counter-affidavit is not required in this case. So, continuing on with the 1889 plat of Craig's edition, we also have to follow that up the 1930-1913 Atlas map which also shows the disputed tract as part of Craig's edition and does not show the alley. The village getting back to the issue of affidavits also has a number of affidavits that are presented by residents of the village documenting usage of the area in the 20th century, a considerable period of time after the 1867 final planning of the town. It's our position that they have no applicability to the issue of the intent to dedicate what was intended at that time. Wouldn't that show that it has been accepted? It would have but for the fact that you have subsequent dedications made by the public which have or for the public which have evidently also been accepted and it also would apply in the face of the original dedication. Over the last 40 or 50 years? Over the last 40 or 50 years, the evidence is clear that this ground has been used by the public and that would certainly support a claim for prescriptive easement but it does not assist in determining whether the initial dedication included this 20 feet and again it does not because it's outside of the statute but of course that's not for the court at this time that would be a matter for the trial court to determine if this matter is a background matter. You say prescriptive easement wouldn't it be a claim of ownership based on prescriptive use? There would be a difference and it would be an easement and it would be limited to the actual usage. Dependent claims of course are right to 20 feet. If the actual usage is a mere 8 or 12 feet a lane that the public actually travels down that prescriptive easement or ownership I would maintain that the appropriate term would be limited to the actual usage. And that's a key factual difference here. Are they entitled to 8 feet or are they entitled to 20 feet? If it is remanded that's one of the conditions for the property to be considered. So the including the verdict summary judgment is certainly on the moving party to establish every element of their claim as well as the absence of any genuine issue material fact. The fact that the affidavits are submitted does not remedy the fact that they really provide little beyond the base of the actual plant and the actual dimensions contained within that plant, 488.5 feet. The fact that this area lies outside of the original plant clearly as dedicated by the town makes entry of the court defined in our favor. Mr. Kuhnrad, before you sit down, I have a question. It relates to the materials for the court's consideration of the trial court and this court relative to summary judgment. Can you identify the materials not in summary judgment that are available for this court's use that are of evidentiary quality? In other words, what is it that we can consider that the defendants did not present in support of their motion for summary judgment? Let's start with the pleadings. Were they verified? Yes. Okay. And the answer, response, was a verified response as well? Yes. And attached to the complaint would have been what? Because that then would be something that both the trial court and this court could refer to in evaluating summary judgment. So attached to the complaint was the corrected plan, the W.P. Craig's addition, which immediately joins that without the alley of course and the 1913, I'm not sure if that was included in the original plan, but the 1913 atlas may have been attached to responsive pleadings in response to the motion for summary judgment. Were there any depositions, any requests to admit in this case? No. And any counter affidavits, which I think we've already discussed? The counter affidavit was from Mr. Spray, which confirmed his ownership of the entirety of W.P. Craig's addition, which includes the disputed area. And otherwise we're relying upon the actual face of the class themselves and of course they are included in the defendants affidavit. Okay. And included in the minor affidavit. But so then just distilling this to the essence of your evidentiary support, it's the plats themselves that provide the evidentiary support for your opposition to summary judgment. That's actually the   we're dealing with. And we believe that the face of those documents create a  issue that's capable of  terminations. Thank you. Thank you, Mr. Quinrod. Mr. Rial. May it please the court counsel and my name is John Rial. I'm the attorney general of the district and we're here obviously to urge the court to affirm the decision of summary judgment in favor of the district. As the court is aware, the district  not found a statutory dedication of this rule based on the 1859 fact. And if he had not found a statutory dedication, in other words, if the fact in 1859 did not technically meet all the requirements of the statute at that time, he would have not found a common law dedication. And this is important because when you think about Huntington's complaint, he is arguing that he was committing a trespass. Well, the district has  been  to a trespass. Now in prior pleadings of plaintiffs who said, wait a minute, this particular alley is not shown in the statute, so that was not the plan. Well, to dedicate not only the roads that are       also the roads that are listed, so that was not the plan. So that was not the plan. All right. But it also included this particular alleyway. Mr. Kuhnrath says, though, that the measurement of 488.5 feet from the starting point does not then include that 20-foot alley. Well, I think what we have to do, Your Honor, is this. We have to look at what Mr. Myers said. He said that the distance between the starting point and the western edge of the 20-foot alleyway is 580 feet. Okay. Mr. Myers did not say it was 488 feet. He said it was 580 feet. All right. And so when we look at Mr. Kuhnrath's observations, they all match up to the fact that in the 1870s, the owners of the lands to the west clearly understood that there was a dedicated 20-foot alley. And why do I say that? I say that because based on the 1859 plan, the western edge of the town is only a quarter of a section of the four-acre tract that was sold. And it's dimension was 246 width lines. That left 546.5 feet between the western edge of that roadway or the alley and this four-acre tract. Well, what do we have occurring in the 1870s? We have two deeds conveying that middle tract, and they are of the distance 546.5 feet. Clearly, they recognized that there was this dedicated strip of land. So, I disagree with Mr. Greenrider. Mr. Myers is indicating that the 1870s clearly did not say that exactly. Plus, his deeds figure out the fact that the 1870s clearly did not indicate that. Now, Mr. Coonerod says, well, that the 1867 correction, even though it doesn't involve that particular section or that particular area, makes a reference to the entire width being 488 feet, 88.5 feet. So, you're supposed to take the 57 flat and the 67 flat, or 59 flat and the 67 flat together, and putting them together, it means that the original flat was 488.5 feet. Well, Your Honor, I differ with Mr. Coonerod on that because that is not what the 1867 flat actually says. It clearly says that it's intended, its purpose, his purpose was to correct the lots in lot 1, period. And that otherwise agrees with the 1859 flat. It does not say within that document that we are revoking the prior dedication that is being put out. Okay? It doesn't say that. It doesn't say that at all. And so that's my response to that, Your Honor. And further, that when a dedication is made, it can be, you know, prior to acceptance and use, it can be revoked. And there is no records that we have, you know, recorded instruments or anything that Mr. Funerar brought before the Court to actually indicate that it's going to be revoked. Now Mr. Funerar relies upon the Craig subdivision flat that was reported in 1889. Okay? Well, a couple of things are correct with that. One, when you read that flat, it doesn't say it's revoking the dedication that was going to be put out. It doesn't say that at all. More importantly though, it doesn't appear that Mr. Craig would have the ability to even do that since his name does not appear on the 1859 flat. In other words, he was not a dedicator of that, of the 1859 flat. If private has titled work to the contrary, he had an obligation to bring that forward. Now, we realize as a movement on a similar judgment we have the  to do that. We did that by producing documents that are part of this court's record here. If there's other evidence, contrary to that, I don't believe that the plaintiff has the right just to sit back and say, you know, all right, if he has evidence challenging what we thought, we have an obligation to do it. Well, his contention is that you can take the documents that you've provided and interpret them and through that interpretation that constitutes evidence of a contrary conclusion. Clearly, that's his argument, Your Honor, but he has brought forth no evidence, supported evidence, of any formal reputation of that allegation. All right? So when it was dedicated in 1859, that strip of land, he brought forth nothing to challenge that. When he criticizes Mr. Meyer in his brief, or perhaps not, the other day,  Meyer said, well, where were you? Mr. Meyer said, okay, if you really have evidence dedicated to those reputations, you have an obligation to do it. We believe that the affidavits that we have submitted to the witnesses clearly demonstrate the acceptance of this reputation. And clearly, they have an indication that the building was using the road, the public was using the road, the building was maintaining the road. And once again, there's just no indication of a reputation. And in account for a decision that we sought to declare, the Appellate Court of the 2nd District decided that an acceptance can occur anytime up to or before it's revoked. And it's our position that that's clearly what happened here. Unfortunately, the people that created the class and issue, they can't see it. But, we do have people going back to their 40s that remember this road, remember its location, remember its use. Mr. Conrude says, well, yeah, but the best you get is amusement. Well, not if we're Saskatchewan dedication. Saskatchewan dedication, we have in Saskatchewan is a retirement home. And we have a plaque that substantially collides with the statues back in 1845. Remember, the plaque was in 1859, the statue was like we have another clipboard in 1845. And we have cited the Greenland case in 1933 that indicates that you got a substantial plaque and that's what you've done. And also the camp order decision discussed this in 1903  also         discussed in 1903. And the Greenland case was also discussed in 1904. And the Greenland case was